SPANISH RUSH BROOM COMPANY, Respondent, *v.* ALBERT C. DOBBERTIN, Appellant.

Fourth Department, November 15, 1922.

Sales — action to recover purchase price of one carload of Spanish rush — counterclaim based on failure to deliver full amount ordered — contract was unconditional as to four carloads and bound plaintiff to ship that amount — contract as to four cars not impossible of performance because of weather conditions as plaintiff filled subsequent orders — defendant entitled to recover on counterclaim for failure to deliver three cars and also for failure to deliver two remaining cars unless weather conditions made shipment impossible as to those.

In an action to recover the purchase price of a carload of Spanish rush in which the defendant interposed a counterclaim based on the failure of the plaintiff to deliver the five remaining cars contracted for, it appeared that the plaintiff in accepting defendant's order wrote in part as follows: " We will not guarantee to ship more than 4 cars between now and February 1st," and stated that the shipments of rush depended absolutely upon weather conditions both in relation to the growth and the curing. Plaintiff shipped one car but failed and neglected to ship the remaining five and contended that it was relieved from the contract because weather conditions made it impossible to ship the remaining cars.

*Held,* that the contract was absolute and unconditional as to four cars of rush and the plaintiff was bound by its contract to make shipment thereof before February first, and for failure to ship three of the cars it must respond to the defendant in damages.

The plaintiff cannot be excused from performance of the contract on the ground that performance became impossible because of weather conditions inasmuch as it appeared without dispute that the plaintiff shipped more than three carloads of rush to other customers on orders accepted after defendant's order and in view of the fact that it had agreed to give the defendant preference.

The plaintiff will be liable in damages for failure to ship the other two cars unless it can be shown that the shipment was rendered impossible by weather conditions.

Appeal by the defendant, Albert C. Dobbertin, from an order of the County Court of Monroe county, entered in the office of the clerk of said county on the 20th day of September, 1921, affirming a judgment of the City Court of Rochester, Civil Branch, in favor of the plaintiff, and also from the judgment entered in said clerk's office on the same day, pursuant to said order.

*David N. Salisbury*, for the appellant.

*Isaac Adler*, for the respondent.

Hubbs, J.:

This is an action brought to recover the sum of $864.51, the purchase price of a carload of Spanish rush sold by the plaintiff to the defendant.

The answer admitted the sale and set up a counterclaim for $2,338.41, with interest. The trial court found in favor of the plaintiff and the County Court affirmed the City Court judgment.

The plaintiff was engaged in the State of Florida in the business of gathering and selling Spanish rush. The defendant was engaged in manufacturing brooms in the city of Rochester. Prior to October 6, 1916, the defendant had purchased of the plaintiff a quantity of Spanish rush and had used it in his broom manufacturing business. On October 5, 1916, the defendant telegraphed to the plaintiff as follows: "Enter our order for six cars fifteen tons each, one to be shipped on each month or sooner. Stock similar to car received."

The plaintiff replied the next day, October sixth, by wire, as follows: "Booking you six cars as per our letter today."

The same day it wrote and mailed to the defendant the following letter: "We have your letter of October 2nd, also your wire of the 5th asking us to enter your order for six (6) cars, 15 tons each, of Spanish Rush, to be shipped one each month or sooner, and we wired you today as follows: ' Shipped you car of Rush October 2nd. Booking you six cars as per our letter today.' While we are booking this order for 6 cars, we will not guarantee to ship more then 4 cars between now and February 1st, however, if it is possible for us to do so and supply our regular customers who are already using Rush, we will be glad to ship you the 6 cars, or one

each month the year round. We are not taking on any more new customers and will give your order preference and use our utmost endeavors to keep you supplied. You understand our cutting season for Rush as a rule begins in July, and ends by the 1st of February, and we have to accumulate enough supplies during this time to supply our regular customers the year round. We realize that only by doing this that we can expect to establish a staple trade, and we will do our utmost to handle your business in this manner. We are absolutely dependent upon weather conditions, both in relation to growth of the Rush and of curing it, and we have been closed down since September 30th on account of North East winds having flooded the Marsh. Unless this weather continues, we will be in a position to make shipment of your next car about the latter part of this month or the 1st of November.

" In regard to the proposition of giving you exclusive sale of New York State, would not object to doing this, but can not afford to sell you at any less than the price of the last 2 cars, that is, $58.50 per ton, less freight, to Rochester, with 2 percent discount for cash, as we are now getting $65.00 per ton less the freight from practically all of our customers."

The defendant accepted the modified offer of the plaintiff and from time to time wrote and wired it to forward cars of rush as agreed. The plaintiff failed to ship any rush until December 23, 1916, when it shipped one car, the only car it ever shipped on the contract.

Its reasons for not shipping the rush as agreed were that the weather conditions were such that the marsh was flooded and it was unable to cut the rush, and that it was obliged to supply its other regular customers from such rush as it had. The trial court and County Court have found that the contract was a conditional contract and that the plaintiff was excused from fulfilling it because of the weather conditions and the necessity of supplying other regular customers. We cannot agree with such construction of the contract.

It is true that the plaintiff was dependent upon weather conditions as stated in its letter embodying the terms of the contract and the defendant knew that fact. As to two of the six cars ordered it protected itself from delivery in case the weather was such that it could not cut and dry a sufficient quantity of rush. The contract as to four cars to be shipped before February 1, 1917, was absolute and unconditional. The letter reads: " While we are booking this order for 6 cars, we will not guarantee to ship more than 4 cars between now and February 1st, however, if is possible to do so and supply our regular customers who are already using Rush,

we will be glad to ship you the 6 cars, or one each month the year round." The plain, unambiguous meaning of that letter was that the plaintiff would guarantee to ship four cars before February first, and, if possible to do so and supply its regular customers, it would ship one car each month thereafter. The statement in the letter that the plaintiff was dependent upon weather conditions was evidently inserted to protect the plaintiff in the event that it should be unable to ship more than the four cars and at the same time take care of the requirements of its regular customers.

It is conceded that the contract did not become impossible of performance in the sense that the plaintiff could not get the rush so as to ship four cars before February first, for it appears without dispute that the plaintiff did ship to other customers more than three cars of rush before February first on orders which it received after it received the defendant's order. It shipped on those later orders although it had written defendant " We will give your order preference." It also appears that it received a higher price for the rush shipped to others than the price at which it contracted to sell to the defendant. It was not impossible, therefore, for the plaintiff to ship to the defendant three cars more than it did ship before February first. If it had declined to accept a part of the orders which it received after it accepted the defendant's order, it would have had sufficient rush to have filled the defendant's contract.

Under such circumstances the rule of law invoked by the plaintiff — that the plaintiff would be excused from performance of the contract if performance became impossible by reason of weather conditions — has no application.

In any event, the defendant was entitled to recover on its counterclaim the damage which he suffered because of the plaintiff's breach of the contract in failing to ship three cars of rush before February first. Whether or not he will be entitled to recover damages for failure to ship the other two cars after February first will depend upon the finding as to whether or not it was possible for the plaintiff to ship those cars owing to weather conditions and the amount required to supply its regular customers.

The judgment of the City Court and of the County Court should be reversed, and a new trial granted, with costs to the appellant to abide the event.

All concur.

Judgment and order reversed and new trial granted in Rochester City Court, with costs in all courts to the appellant to abide event. New trial in City Court to be had on the 28th day of November, 1922, at ten A. M.